The opinion of the Court was delivered by
Kennedy, J.
The chief question here, is settled by the principles laid down in the case of Lancaster v. Dolan, (1 Rawle, 231.) In that case; the conveyance to the trustees, was upon trust “ to permit the party, (who at the time was a feme sole, but contemplated *521 being married,) to use, improve, occupy, possess and enjoy; and to receive all and singular, the rents, issues and profits,” and it was considered that the trustees took the estate with the use executed. The Chief Justice who delivered the opinion of the Court says,, “ a use' thus limited to any other than a married woman or feme in contemplation of marriage, wrould be executed; but it is immaterial whether the trust be to pay a married woman the profits, or to permit her to receive them, it being necessary to a separate provision, that the legal .estate should remain in the trustees, to prevent the husband from taking the profits, and defeating the very object of the conveyance.” It is certainly true, that a distinction has been made between a devise to a person to pay over the rents and profits to another, and a devise in trust to permit another to receive the rents and profits. In the first case it has been held that the legal estate should continue in the first devisee, so that he might perform the trust, because without having the control of the estate, he could not receive the rents and pay them over as directed ; Neville v. Saunders, (1 Vern. 415.) But in the second case, it has been adjudged that the legal estate is vested by the statute of uses, in the person who is to receive the rents. Boughton v. Langly, (2 Ld. Raym. 873.) This distinction, however, as the Chief Justice has said in Lancaster v. Dolan, does not exist in the case of a feme covert, where the estate is conveyed or devised to trustees for her separate use. The courts in such case will, if possible, construe the grant or devise, so as to vest the legal estate in the trustees, for the purpose of carrying into execution, in the most effectual manner practicable, the intention of the donor. Harton v. Harton, (7 Term. Rep. 648.) 1 Cruise’s Dig. tit. 12, Trust, ch. 1, pi. 15, page 456, and pi. 19, page 457. As to the intention of the donor in this case, there can be but one opinion respecting it. It is most unequivocally declared to be to give the wife the separate use and benefit of the estate during her natural life, without subjecting it to the control of her -husband, or to liability in any way whatever, for the payment of his debts. This being the intention expressed in the deed, it is manifest that it would be entirely defeated, if it were to be held that the use was executed in the wife; for this would be putting the estate under the control and direction of her husband, so as to enable him to take the rents in despite of her, and to dispose of them as he pleased. 'The design, therefore, of the donor, can only be carried into effect, by considering the legal estate as vested under the deed in the trustee. That this was intended, is still further indicated by the clause giving the wife the power to dispose of it for the benefit of herself and children, which requires the trustees, in case of such disposition being made by her, to execute such writing as should be required by law to carry it into effect; which could be of no avail, and was unnecessary, unless he thought he was investing him with the legal estate. Seeing then that the legal estate became thus vested in the trustee and not in the wife or *522 her husband, how could it be taken in execution and sold as their property, under a judgment against them l To this, it has been answered, that the equitable estate, at least, was in the wife in the same manner as if she had been a feme sole; and that any interest in land in Pennsylvania, whether of a legal or equitable nature, is liable to be taken in execution. That this latter branch of the proposition, when such interest is not restricted to a special use in a limited form, may be true generally, cannot perhaps be denied. But here, admitting the wife to have had an equitable interest, it was only to receive the rents or profits of the estate for her own private and separate support and maintenance; and in case she sold or rather contracted for a sale of the estate under the authority given her in the deed, then to receive the proceeds thereof, for the benefit of herself and children, without being subject to the control or authority of her husband in any respect whatever. The power of the trustee over the estate was interposed between it and the husband, so as to guard and protect it for her benefit against any act of his being made to affect it, either directly or consequentially. Now the judgment under which the sale was made, or the cause of action upon which it was founded, does not appear to have had any'connection whatever, with the support, comfort, maintenance or benefit, of either the wife or her children; but on the contrary, it seems to have been for a tort committed by the husband and wife jointly; in which she may be fairly presumed to have joined under force of his authority; which would in effeet be subjecting the estate to the will of the husband, contrary to the tenor of the deed creating the trust, and the intention of its author, if it were to be held liable to redress the party injured by such acts. Beside, as it is impossible to conceive that the wife could have derived any benefit from the transaction tipon which the judgment was founded, it is difficult even in an equitable point of view, to discover, any good ground upon which the sale can be supported; because, I take it, that the right to take in execution a mere equitable interest in lands is rather founded upon principles of equity and natural justice; inasmuch as it cannot be done at law in England, whence we derived our principles of jurisprudence. I however, do not wish to be understood as saying that the wife was not liable to be sued with her husband, for their joint wrongful act; because by law, she undoubtedly may in many cases; see Com. Dig. tit. Baron & Feme. (Y.) Draper v. Fulkes, (Yelv. 166, in Mr. Metcalf’s note.) 2 Saund. on Pl. & Evi. 572; but merely to say that in a moral and conscientious point of view, the blame chiefly rests with him ; for if hot corpmitted in obedience to his authority, he could and ought to have restrained her as well as himself from doing it. It is clear, therefore, that to hold, that the sale made under the judgment in this case, divested the trustee of the estate, and extinguished the trust, would be to frustrate the sole and entire object of its author; and to permit the estate to be disposed of in a manner *523 different, as well as appropriated to uses altogether foreign from that authorised and prescribed by the deed of trust; which would be overruling what is laid down in Lancaster v. Dolan; that even the cestui que trust herself, cannot exercise an authority over the estate, so as to divert it from the defined object of the trust, further than she is expressly empowered to do so by the terms of the deed; and then only in the manner and form prescribed by it.
This brings us to the conclusion, that the plaintiff is entitled to recover, unless he be estopped by the award of the arbitrators.
The submission under which the award was made, has express reference to a summary proceeding commenced before two justices of the peace, therein named, by the defendant as a purchaser at sheriff’s sale of the property in dispute ; which could only have been instituted under the act of the 5th of April, 1802, entitled, “ An act to enable purchasers at sheriff’s and coroner’s sales to obtain possession.” According to the terms of the submission, the question was, “ whether the plaintiff (that is the defendant, who was the plaintiff in that proceeding,) as sheriffs vendee is, or is not, entitled to the possession of the property in dispute.” It is therefore fairly, inferrible that the only question submitted' to the decision of the arbitrators, was, whether agreeably to the provisions of the act, the plaintiff in the proceeding, commenced by him under it, was entitled, he having the sheriff’s deed for it, duly acknowledged in, and certified under the seal of the proper court, to recover the possession. Now it is pretty obvious from the preamble of the act, that the great object for passing it, was to put the purchaser at sheriff’s sale, in possession of the. land bought by him, without any unreasonable delay; and that too, whether the sale was valid or not, so he had a deed for it, acknowledged and certified as mentioned above; because from the inability generally of the owners of lands, so sold, to compensate the purchasers at sheriffs’ sales, for the injury and loss arising from the great delay that attended the recovery of the possession in ejectment, which was the only remedy then in being, and one where the regularity and validity of the sales could be investigated and decided on; the latter had frequently sustained great damage, and been put to much expense without the possibility of remuneration; but still, leaving the owner of the land after he should be evicted from possession by this proceeding, to bring his action of ejectment without prejudice, and thus have the validity of the sale tested. This is demonstrated by the terms of thé first section of the act, which makes the sheriff’s deed, in such summary proceeding, if duly acknowledged in and certified under the seal of the proper court, conclusive evidence of the sale ; and further provides, that no certiorari, which may be issued to remove such proceedings, shall be a supersedeas, or have any effect to prevent or • delay the delivery of tne possession. A judgment in a proceeding under this act, against the defendant, is not even equivalent in its effect to a *524 judgment in ejectment, though it seemed to be doubted by the counsel for the defendant, whether it was not conclusive. The whole scope and design of the act, as may be plainly collected from the several parts of it, show' clearly, that such judgment ought not to be any bar or impediment to the maintenance of as many actions of ejectment afterwards, between the parties, as if there never had been a proceeding under the act. Indeed, it would have been unjust, had it provided otherwise; for the title to the land, or the validity of the sheriff’s sale, cannot be brought in question or inquired into. Considering then, the arbitrators as substituted for the justices and the inquest, for the purpose of passing upon the defendant’s right to the possession under his sheriff’s, deed, upon the same ground that the justices and the inquest should have done, which I am rather inclined to think, meets the design and intention of the parties best, the award .ought not to have any other or greater effect than a judgment rendered by the justices and the inquest; which would have had, as I have shown, no effect in barring the plaintiff here of his right to recover. But, even supposing the submission had been intended to embrace the title to the land between these parties, and that it is to be considered, as a submission and an award at common law, it does not appear that they all gave their assent to the submission. Without this, the award cannot be considered as possessing any binding effect whatever. Sophia Johnson, the cestui que trust, who had certainly a much greater interest in the matter than any other, never signed or assented to the submission. For although it appears to have the name of a gentleman of the bar to it, as attorney for the defendants, meaning Johnson and his wife, who are set down as the defendants in the caption to the submission, yet it does not appear, that he had any authority from the wife to do this. It may and most likely was done at the instance of the husband; which would not bind her in a common law submission in such case. But this form of signing the submission among other things, also tends to show that it was rather considered as a continuation of the same proceeding, and for the same end with that commenced before the two justices of the peace. Upon the whole, we are satisfied, that the judgment of the District Court ought to be reversed, and that judgment here ought to be rendered for the plaintiff.
Judgment for the plaintiff