# Wetherill *v.* Mecke.

[MARCH 20, 1850.]

A devise of real estate, in trust, one-third part thereof to the use of my daughter S. L. M., and her heirs; one-third part thereof to the use of R. L., wife of my son J. B. L., and her heirs; and the other third part to the use of E. L., wife of my son J. L., and her heirs; the rents, issues and profits to be paid to them according to their respective portions of the same; and their receipts to be sufficient acquittances to the trustee: with power to the *cestuis que trust,* by writing, with the consent of the trustee, to revoke the trust; and also, with his consent, to make sale of the premises for the purpose of investing the proceeds in any other kind of property more beneficial or productive to them; gives to the devisees separate estates for their own use.

One of the devisees being a *feme sole* at the death of the testatrix, the use was executed by the statute, and she had power to convey her interest in the premises by deed.

A conveyance by another of the devisees, who was a *feme covert,* and her husband, (with the assent of the trustee,) in exercise of the power vested in her by the will, to her son, in consideration of one dollar, and of other valuable considerations, is not a valid execution of the power, and passes no title to the property.

A *feme covert* has no power over her separate estate but what is given to her by the conveyance creating it; and then only, in the manner and form and for the objects therein prescribed.

A *feme covert,* being compellable to make partition, may become party to an amicable action of partition; and so also may minors, by their guardian.

A court of equity will not compel a purchaser to accept a *doubtful* title.

IN EQUITY. Bill for specific performance. The bill stated that the complainant, being the owner of a house and lot of ground in the city of Philadelphia, on the 23d of June,

1849, sold the same to the respondent for $15,000; and prayed that the respondent might be compelled to perform his agreement, and pay the purchase money to the complainant, with interest, on the execution of a proper conveyance.

The answer admitted the agreement as set forth in the bill, except that it was expressly made a condition of the said agreement that the title to the premises should be undoubted. That respondent had always been willing to comply with the terms of his agreement; but that complainant could not make him an undoubted or marketable title to the premises, wherefore he was not entitled to a specific performance.

That the complainant derived his title from one Dorothy Large, who was formerly the owner of the premises. That the said Dorothy Large, by her will, dated the 3d November, 1827, and proved on the 6th December, 1832, devised her real estate, including the said premises, to James Large Mifflin and his heirs, in trust, in the words following, to wit:

" In trust, nevertheless, for the uses and purposes following, that is to say, one-third part thereof to the use of my daughter, Sarah Large Mifflin, her heirs, executors and administrators; one-third part thereof to the use of Rebecca Large, the wife of my son, John Baldwin Large, her heirs, executors and administrators; and the other one-third part to the use of Elizabeth Large, the wife of my son, James Large, her heirs, executors and administrators: and it is my will and desire that the shares and portions of the estate, so as aforesaid given, devised and bequeathed to the said James Large Mifflin, shall be held and retained by him, the said James Large Mifflin, his heirs, executors and administrators, in trust as aforesaid; and that the rents, issues and profits thereof be paid to the said Sarah L. Mifflin, Rebecca Large and Elizabeth Large, according to their and each of their respective third parts or portions of the same; and the receipts for the same, to be given by

[ Wetherill *v.* Mecke.]

the said Sarah L. Mifflin, the said Rebecca Large, and the said Elizabeth Large, from time to time, in writing, shall be good and sufficient vouchers and acquittances to the said James Large Mifflin, his executors and administrators, for the payment of the rents, issues and profits aforesaid. *Provided*, nevertheless, that it shall be competent for the said Sarah L. Mifflin, Rebecca Large and Elizabeth Large, by writing under their hands, with the assent and concurrence of the said James Large Mifflin, his heirs, executors and administrators, by writing under his or their hands, to dissolve the aforesaid trust; and in such case, the said residue of the said real, personal and mixed estate, so given, devised and bequeathed as aforesaid, shall be and remain to the said Sarah L. Mifflin, Rebecca Large and Elizabeth Large, and their and each of their heirs, in their own rights, and according to the purparts before described, in fee-simple for ever. And it is my will also, that in case the legatees aforesaid, with the consent and concurrence of the trustees aforesaid, should desire, at any time, to make sale or disposition of the aforesaid estate, or any part or parts thereof, for the purpose of investing the proceeds in any other kind of estate or property, more beneficial or productive to them, it shall be competent for them, at any time, so to do, by agreement in writing, under their hands, or the hands of their legal representatives respectively."

That Elizabeth Large, one of the devisees, died intestate, after the death of Dorothy Large, leaving a husband, James Large, and four children, to wit, Thomas P., Mary, Anne P., and Sally M. Large, surviving, to whom her share descended.

That afterwards, on the 20th June, 1833, by indenture between the said Sarah L. Mifflin, of the first part, the said James Large Mifflin, of the second part, the said Rebecca Large, wife of John B. Large, of the third part, and the said Thomas P., Mary, Anne P., and Sally M. Large, of

K

[ Wetherill *v.* Mecke.]

the fourth part; reciting the will of the said Dorothy Large, the death, intestate, of the said Elizabeth Large, leaving the said four children, and an arrangement for the division of the property, by which it was agreed, by the said first party, to convey to the said third and fourth parties equally, the third of the real estate therein devised to her and her heirs, and that the said trustee concurred in such conveyance, by becoming a party thereto; the said Sarah L. Mifflin, in consideration of the premises, and other valuable considerations, and of one dollar to her paid by and on behalf of the third and fourth parties, thereto, did convey to the said third and fourth parties thereto, and their heirs, all and singular the lands, messuages, tenements and hereditaments, devised unto the said Sarah L. Mifflin, by her mother, Dorothy Large, by her last will and testament, to hold " one moiety thereof unto the said Rebecca Large and her heirs, and the other moiety thereof unto Thomas P. Large, Mary Large, Anne P. Large, and Sally M. Large, as they now respectively hold their own shares and proportions of the real estate devised under the said will, with the like power and incidents, and as if the property now conveyed had been devised by the said will, in trust for the same uses that the other two-thirds had been devised upon and subject to."

That on the 21st November, 1833, an amicable action of partition was entered in the district court for the city and county of Philadelphia, wherein the said Thomas P. Large, Mary Large, Anne P. Large and Sally M. Large, minors, by their guardian, James Large, were plaintiffs; and the said John B. Large and Rebecca his wife, in her right, were defendants.

By this agreement, signed by the said James Large, guardian, and John B. Large and Rebecca Large, it was agreed that the said action be entered as if a summons had issued, in partition, for the parting and dividing the several hereditaments therein set forth, including, *inter alia*, a lot

[ Wetherill *v.* Mecke.]

of ground, of which the premises in question are a part; and that judgment be entered against them, that partition be made between them and the said plaintiffs, and that the same be parted and divided into two equal moieties, one moiety thereof, according to value, unto the said plaintiffs, and the other moiety thereof, according to value, unto the said Rebecca Large, to be held by the said parties in severalty. Thereupon, a writ *de partitione facienda* was issued, to which the sheriff made return that, on the 29th November, 1833, he, the said sheriff, and a jury summoned by him under the said writ, had parted and divided the premises therein described into two equal parts, and allotted, *inter alia*, a lot of ground, of which the premises mentioned in the bill are a part, to the said Rebecca Large, to be held by her in severalty; which return was confirmed by the court on the 10th December, 1841.

That, on the 16th April, 1835, by indenture of that date between the said James Large Mifflin, trustee, &c., under the will of Dorothy Large, deceased, of the first part, the said John B. Large and Rebecca his wife, in exercise of the power in her vested by said will, of the second part, and Robert H. Large, who is a son of the said John B. and Rebecca Large, of the third part; the said James L. Mifflin, John B. Large and Rebecca his wife, in consideration of the sum of one dollar, *and other valuable considerations*, did grant and convey to the said Robert H. Large, in fee, a lot of ground, including the premises in question.

The answer further stated, that the complainant derived his title to the premises from the said Robert H. Large, by sundry mesne conveyances; and that he could not make an undoubted nor a marketable title to him, because the conveyance from John B. Large and Rebecca his wife, to Robert H. Large, of the 16th April, 1835, was not a valid execution of the power of sale and disposition given to the said Rebecca, by the will of the said Dorothy Large: and that the said proceedings in partition were irregular and

[ Wetherill *v.* Mecke. ]

defective, and do not conclude all parties interested in the premises.

*Perkins*, for complainant.
*M'Call*, for defendant.

The following opinion was delivered by

BELL, J.—No doubt the devisees named in the will of Dorothy Large took separate estates to their own use. But Sarah Large Mifflin (one of them) being a *feme sole*, this use was executed by the statute, and her conveyance of June, 1833, was therefore probably effective to convey her interest in the subject of that deed; more particularly, as the object seems to have been to effect a partition of the devised estate. *Lancaster* v. *Dolan*, 1 R. 246–7; 1 Saund. on Uses, 197. So, too, I think the agreement to enter into an amicable action of partition, between the minor children of Elizabeth Large, by their guardian, and John B. Large and Rebecca his wife, and the subsequent proceedings, resulting in a final judgment, may be supported, on the ground, that the minors and *feme covert*, Rebecca Large, being compellable to make partition of the trust property, their voluntary agreement to do so, or any step towards it, is valid, in the absence of any allegation of unfairness. Litt. § 257; Co. Litt. 171 *a;* Allnatt on Part. 21. And the *feme covert*, infants and *cestuis que trust* were, properly, made parties to the action. *Attorney Gen.* v. *Hamilton*, 1 Madd. 122; *Willing* v. *Brown*, 7 S. & R. 468; *Gratz* v. *Gratz*, 4 R. 411; Act of 1807; Miller on Part. 34; Allnatt 27, 104. But this partition left the land still subject to the trust, and the directions of the will by which it was created. Now, since *Lancaster* v. *Dolan*, 1 R. 248, it is the settled doctrine of this state that a wife, in respect of her separate estate, is deemed a *feme sole* only to the extent of the power given by the conveyance creating the estate. Instead of having an absolute right of disposition,

unless expressly restrained, (which seems to be the modern English doctrine) the converse of the proposition is true, viz. that a married woman has no power but what is expressly given. She cannot exercise an authority over the estate, so as to divert it from the defined object of the trust further than she is expressly empowered so to do, by the terms of the deed; and then only in the manner and form and for the objects prescribed by it. *Pullen* v. *Rianhard*, 1 Wh. 514; *Thomas* v. *Folwell*, 2 Wh. 16. So far was this doctrine carried in *Dorrance* v. *Scott*, 3 Wh. 309, that a power to a *feme covert* to sell and absolutely convey the estate, and to appropriate the proceeds to her own use, or to devise to whom she saw proper, and in default of a devise over to her right heirs, was not well executed by a confession of judgment to secure repayment of money borrowed. *Lyne's Executor* v. *Crouse*, 1 Barr 111, is another strong case: there, a *feme*, in contemplation of marriage, conveyed her estate in trust for the separate use of herself, her heirs and assigns for ever, and to be subject to her order alone: it was ruled, she had no power of disposition, having reserved none.

By the will of Dorothy Large, the *cestuis que trust* were empowered to revoke the trust declared, by writing executed by all of them, with the assent of the trustee. This has not been done. Failing this, they were empowered, with the consent of the trustee, to sell and dispose of the trust estate, " for the purpose of investing the proceeds in any other kind of estate or property more beneficial or productive to them;" and, perhaps, after partition made, this might have been done by one of them, in respect of the purpart assigned to her, and which, of course, she would continue to hold, in severalty, subject to the trust. But it is not apparent that the conveyance from Rebecca Large and her husband, to their son Robert H. Large, was for any such purpose. Nay, the consideration expressed, of one dollar, would seem to prove no purpose of again

[ Wetherill *v.* Mecke.]

purchasing with the purchase money was in view, or led to the conveyance to the son. I do not think this is helped by the allegation of " other valuable considerations," especially in the absence of any averment in the bill or answer, of such being the object of the sale. The defendant insists, that looking only to the muniments tendered him, the plaintiff cannot make a marketable title, inasmuch as the latter derives his interest in the premises under the deed to Robert H. Large, which was not a valid execution of the power, and therefore passed nothing. It strikes me there is soundness in this objection. At all events, I *doubt* the title tendered, and this is sufficient, for the present, to defeat the prayer for a specific performance.

The plaintiff's bill must be dismissed with costs.*

---

* A marketable title in equity, is one in which there is no doubt involved, either as to matter of law or fact; and such a title only will a purchaser be compelled to accept. This distinction between good and marketable titles seems peculiar to courts of equity, being unknown in courts of law, where the question is absolutely, *title,* good or bad. The equity doctrine seems to involve this result, that no title will be forced on a purchaser which is not so free from difficulty, as to law and fact, that on a resale, an unwilling purchaser shall be unable to raise any question which may appear to a judge, sitting in equity, *so doubtful,* that a title involving it ought not to be enforced. These doubts must, however, in the language of Lord Eldon, (in *Stapleton v. Scott,* 16 Ves. 272) be "considerable and rational," such as would and ought to induce a prudent man to pause and hesitate, in the acceptance of a title affected by them; not based on captious, frivolous and astute niceties, but such as produce real, *bonâ fide* hesitation in the mind of the chancellor. *Dalzell* v. *Crawford,* 2 Penn. L. J. 21, 22; S. C. 1 Pars. Eq. Cases, 37. And if the contract be vague and uncertain, a court of equity will not exercise its extraordinary jurisdiction, but leave the party to his legal remedy. *Parrish* v. *Koons,* 1 Pars. Eq. Cases, 80.