## The Girard Life Insurance and Trust Company *versus* Chambers.

*Construction of will creating trust.—Income of trust property, when liable for debts of* cestui que trust.

1. A testatrix by her will devised real and personal estate to a trustee in trust "to collect and receive the rents, issues, interest and income therefrom" and after deducting expenses, "to pay over the same unto the *cestui que trust* for his own use and benefit, or to such person as by his order in writing he may authorize to receive the same:" and upon his decease, to assign, transfer, and convey the said estate so held, as he by his last will should appoint: and in default of appointment, to such person or persons, for such estates and in such shares, as would be entitled to the same, had he died seised thereof, intestate; *Held,*

[Girard Life Insurance and Trust Co. *v.* Chambers.]

(1). That the trust was an active one, vesting the legal estate in the trustee: but,

(2). That the income for life was the absolute property of the *cestui que trust,* and was therefore attachable by his creditors.

2. The income for life could only have been secured to the *cestui que trust* by provisions in the will against alienation and liability for debts.

CERTIFICATE from the Supreme Court at *Nisi Prius.*

This was an attachment execution, issued April 13th 1860, at the suit of John Chambers against Silas E. Weir, in which the Girard Life Insurance, Annuity, and Trust Company of Philadelphia was summoned as garnishees.

Interrogatories in the usual form were filed and answered by the garnishees, who also pleaded *nulla bona,* under which the cause was tried between the plaintiff and the garnishees.

The material facts of the case were these :—On the 22d day of May 1857, John Chambers obtained a judgment in the Supreme Court against Silas E. Weir for $10,000. On the 14th May 1859, Mrs. Martha H. Chambers, the mother of Silas E. Weir, made her last will and testament, in and by which she devised and bequeathed, *inter alia,* as follows :—

"12. All the rest, residue, and remainder of my estate, real and personal, of whatever kind and description, whether vested in my own name, or held in trust subject to my powers of appointment, I do hereby give, devise, bequeath, limit, appoint, and dispose of as follows (subject always, nevertheless, to the foregoing directions relating to so much of the aforementioned loans or sums of money as shall be due and unpaid to me at the time of my decease), that is to say : one equal fourth part thereof unto my daughter, Anna Maria Young, her heirs, executors, administrators, and assigns, absolutely, and one other equal fourth part thereof unto my son, William Weir, his heirs, executors, administrators, and assigns, absolutely; and one other equal fourth part thereof unto ' The Girard Life Insurance, Annuity, and Trust Company of Philadelphia,' and their successors, to have and to hold the same in trust, nevertheless, for the following uses and purposes ; that is to say, during the life of my son, Silas E. Weir, to collect and receive the rents, issues, interest, and income therefrom, and (after deducting all proper expenses for the execution of this trust) to pay over the same, quarterly, unto the said Silas E. Weir, for his own use and benefit, or to such person as by his order in writing he may authorize to receive the same ; and upon the decease of the said Silas E. Weir, to assign, transfer, and convey the share and estate so held to and among such person or persons, and in such parts or shares, and for such estates and uses, and in such manner as the said Silas E. Weir, by his last will and testament in writing, duly executed in the presence of two or more subscribing wit-

nesses, shall direct and appoint, and in default of any appointment as aforesaid, then to such person or persons, for such estates, and in such shares, as by the laws of the state of Pennsylvania would be entitled to the same as if the said Silas E. Weir had died intestate, seised and possessed thereof; and the remaining equal fourth part thereof unto 'The Girard Life Insurance, Annuity, and Trust Company of Philadelphia,' and their successors; to have and to hold the same, in trust, nevertheless, for the following uses and purposes, that is to say; during the joint lives of my daughter-in-law, Julia Weir, and of my granddaughter Laura Weir (the widow and daughter of my late son, John Henry Weir), and during the life of the survivor of them, to collect and receive the rents, issues, interest, and income thereof, and (after deducting all proper expenses for the execution of this trust) to pay over the same quarterly, to and between the said Julia Weir and the said Laura Weir, share and share alike; and from and after the decease of either of them, to pay over the whole net income as aforesaid to the survivor of them, for and during the term of her life; and upon the decease of the survivor of them, to divide the share and estate so held into three equal parts, and to assign, transfer, and convey one of the said equal parts unto the aforenamed Anna Maria Young, her heirs, executors, administrators, and assigns, absolutely; and one other of the said equal parts unto William Weir, his heirs, executors, administrators, and assigns, absolutely; and the remaining equal part to 'The Girard Life Insurance, Annuity, and Trust Company of Philadelphia,' and their successors, to hold the same in trust, nevertheless, for the aforesaid Silas E. Weir, in the same manner, and for the same uses and purposes, and subject to the same limitations, powers, and appointments as hereinbefore declared, of and concerning that portion of the residue of my estate hereinbefore devised and bequeathed to the said corporation for his use.

"13. I do hereby authorize and empower 'The Girard Life Insurance, Annuity, and Trust Company of Philadelphia,' and their successors, to grant, sell, dispose of, convey, and transfer all, or any and every part of such real estate, securities, loans, stocks, and funds received in payment of the devises and bequests hereinbefore made to them, in trust, and to lay out and invest the money arising therefrom in or upon other loans and securities or investments, and the interest, dividends, and income thereof shall be held by them, upon the same trusts, and for the same intents and purposes, respectively, as are herein declared of and concerning the said devises and bequests; and I do hereby will and direct that the shares and portions of my estate hereinbefore devised and bequeathed, in trust, unto 'The Girard Life Insur-

ance, Annuity, and Trust Company of Philadelphia,' shall be transferred and paid to them as soon as practicable after my decease, so that the income therefrom may accrue to the several persons to receive the same with as little delay as may be."

By the same will she appointed her son, William Weir, and her friend Robert Ewing, executors. Mrs. Chambers died March 16th 1860.

The will was duly admitted to probate by the register of wills of Philadelphia county, March 22d 1860, and on the same day letters testamentary were granted thereon by the said register to the executors, William Weir and Robert Ewing.

On the 22d August 1861, the executors of Mrs. Chambers transferred and handed over to "The Girard Life Insurance, Annuity, and Trust Company of Philadelphia," the trustees for Silas E. Weir, certain loans, bonds, stocks, and cash, being the share of the residuary estate bequeathed by Mrs. Chambers to Silas E. Weir. The securities and cash, were as follows:—

$2000 Pennsylvania Railroad second mortgage bonds.

$1000 Schuylkill Navigation 6 per cent. loan, redeemable in 1872.

$700 Schuylkill Navigation 6 per cent. loan, redeemable in 1882.

   20 shares of stock of Farmers' and Mechanics' Bank.

   14 shares of stock of Commercial Bank of Pennsylvania.

    4 shares of stock of Philadelphia Bank.

    2 shares of stock of The Pennsylvania Fire Insurance Company.

$99.84 in cash, of the value of $6109.84.

Which were in the hands of the company at the service of the attachment.

There was also in the hands of the company $924.75, representing the income derived from the property bequeathed to them in trust for Silas E. Weir, which income was invested in the 6 per cent. loan of the city of Philadelphia.

The issue was tried December 18th 1862. The plaintiff put in evidence the answers of the garnishees, admitting the possession of the property, and claiming to hold it as trustees for Silas E. Weir, under the last will of Mrs. Chambers, in pursuance of the provisions thereof. The question of law was submitted without argument of counsel, and the learned judge instructed the jury that the property bequeathed to "The Girard Life Insurance, Annuity, and Trust Company of Philadelphia," in trust for Silas E. Weir, was subject to the attachment, and directed them to find accordingly. Whereupon the jury found for the plaintiff.

The case was then certified to the court *in banc*, when it was averred,

1. That the learned judge erred in instructing the jury that the property in the hands of the garnishees was liable to the attachment execution.

2. In directing the jury to find a verdict for the plaintiff.

*John C. Mitchell*, for plaintiff in error.

*Russell Thayer*, for defendant in error.

The opinion of the court was delivered, February 25th 1864, by
READ, J.—Anderson *v*. Dawson, 15 Ves. Jr. 532, was the case of a settlement by a *feme sole*, in contemplation of marriage, of part of her fortune, in trust to pay the dividends to herself for her separate use for life, and after her death, for her intended husband, and after the death of the survivor, to transfer the capital to her appointment by will, and in case she should die without appointment, and he should be then dead, in trust for her next of kin, their executors and administrators, according to the Statute of Distributions. She became a widow, and filed a bill praying that the trustees may be decreed to transfer the stock to her on the ground that she was absolutely entitled to it, discharged of the trusts of the settlement. Sir William Grant dismissed the bill, holding that the widow had only a life estate, with a power of disposition by will. He said (p. 536), "This bill can be supported only upon the assumption that the plaintiff has the absolute property in the fund, and is not merely entitled for life with a power of disposition by will. In order to make that out, it must be shown that the ultimate limitation to her next of kin is either wholly inoperative or is in effect a limitation to herself; but there is a great difference between a limitation to the executors and administrators and a limitation to the next of kin. The former is as to personal property, the same as a limitation to the right heirs as to real estate, but a limitation to the next of kin is like a limitation to heirs of a particular description, which would not give the ancestor, having a particular estate, the whole property in the land. The meaning of 'next of kin' of the plaintiff must be those who answer that description at her death, who may be very different persons from her administrators." In the last edition of his celebrated treatise on Powers, pp. 638, 639, Lord St. Leonards states this to be the law, using the very words of the Master of the Rolls. In Edwards *v*. Saloway, 2 Phillips 625, it was held by Lord Cottenham, that a gift to trustees by will of a fund in trust for the wife's separate use for life, and after her death, as to part for such persons as she should appoint by deed or will, and in default of such appoint-

ment, a gift thereof unto and amongst her next of kin, as in the case of distribution of intestates' effects, prevents a lapse by death in her husband's lifetime, and her next of kin take.   This case is stated to be the law by Lord St. Leonards, and also in 2 Jarman on Wills (3d ed.), p. 721; Tudor's Lead. Cases on Real Property (2d ed.), p. 815.   The same doctrine is laid down in Hansen *v.* Miller, 14 Simons 22, Vice-Chancellor Shadwell saying (p. 26), " The other argument in favour of the lady's claim was founded on the trusts of the settlement; I mean the trust which gives her power to dispose of the fund by her will, and the ultimate trust in favour of her next of kin.   But my opinion is, that as the law now stands, neither of those trusts can be held to enlarge the interest which she takes under the first trust," which was to pay her the income during her life ; and the declaration made by the vice-chancellor was, that she was absolutely entitled to the dividends of the consols *during her life.*

This rule is distinctly recognised by Chancellor Kent in Jackson *v.* Robins, 16 Johns. Rep. 388: " Where an estate is given to a person generally or indefinitely with a power of disposition, it carries a fee, and the only exception to the rule is, when the testator gives to the first taker an estate for life *only*, by certain and express words, and annexes to it a power of disposal.   In that particular and special case, the devisee for life will not take an estate in fee, notwithstanding the distinct and naked gift of a power of disposition of the reversion:" 4 Kent's Com. 633, 634, 9th ed.   In Flintham's Appeal, 11 S. & R. 19, Judge Gibson applies the rule to personal estate.   " In general," says he, " the bequest of a legacy to be at the disposal of the legatee, is a bequest of the absolute interests; but a power of disposition at death, engrafted on an express limitation for the life of the legatee, will not enlarge his interest by implication against the express intention of the testator."   The same rule is stated by the same learned judge, when chief justice, in Morris *v.* Phalen, 1 Watts 390, and in Hess *v.* Hess, 5 Id. 191, where the chief justice says : " The implication of absolute ownership from a general power of disposal, may be rebutted by the express gift of a lesser interest, which is inconsistent with it.   Such is the principle of Morris *v.* Phalen, and the cases from which it was extracted."   Smith *v.* Starr, 3 Whart. 62, was decided upon the principle above stated by Chancellor Kent, in Jackson *v.* Robins.

I have been more particular in citing and stating these different authorities, both with regard to real and personal estate, because if Harrison *v.* Brolasky, 8 Harris 299, cannot be reconciled with them, upon the ground that there was no express limitation of an estate for life in Mrs. Harrison, it is clearly not the law.   Potts's Appeal, 6 Casey 168, in which the opinion of the court below was simply adopted by this court, decided that

the words used created an estate tail in the real property, and of course an absolute interest in the personalty. The other cases cited by the defendant in error, are either overruled or modified, so as not to bear on the case before us.

In Ralston v. Waln, 8 Wright 279, this question came directly before us last winter, and we decided, on the authority of Anderson v. Dawson and Hansen v. Miller, that a deed of trust which gave a life estate to Mrs. Ralston (then a widow), with a power of appointment by will, in default of the exercise of which power, it was given to the person or persons who would be her next of kin at her decease by the intestate laws of Pennsylvania, gave her only a life estate, and that she was not entitled to a conveyance or transfer of the personalty, which was the subject of the trust from the trustees.

The judgment of the Rev. John Chambers against his step-son, Silas E. Weir, was on a bond and warrant of attorney, and entered to July Term 1857, No. 35; and the will of his wife, Mrs. Martha H. Chambers, was dated 14th May, A. D. 1859, to which there were two codicils, dated respectively the 28th July in the same year and the 29th February 1860. The will and codicils were proved 22d March 1860, and letters testamentary were granted to the executors, William Weir and Robert Ewing. On the 13th April 1860, the attachment execution, which is the subject of our consideration, was issued by the plaintiff upon his judgment above stated, and served upon the Girard Life Insurance, Annuity, and Trust Company, who were summoned as garnishees. On the 22d August 1861, the executors of Mrs. Chambers transferred and handed over to the said company, as trustees for Silas E. Weir, named in the will upon the trusts in said will mentioned, the loans, bonds, stocks, and cash mentioned in the verdict of the jury, being one fourth part of the residuary real and personal estate bequeathed and devised by the said will. The trusts were "one other equal fourth part thereof unto 'The Girard Life Insurance, Annuity, and Trust Company of Philadelphia,' and their successors, to have and to hold the same in trust nevertheless for the following uses and purposes; that is to say, during the life of my son, Silas E. Weir, to collect and receive the rents, issues, interest, and income therefrom, and (after deducting all proper expenses for the execution of this trust) to pay over the same unto the said Silas E. Weir for his own use and benefit, or to such person as by his order in writing he may authorize to receive the same; and upon the decease of the said Silas E. Weir, to assign, transfer, and convey the share and estate so held, to and amongst such person or persons, and in such parts or shares, and for such estates and uses, and in such manner as the said Silas E. Weir, by his last will and testament in writing, duly executed in the presence of two or more sub-

[*Girard Life Insurance and Trust Co. v. Chambers.*]

scribing witnesses, shall direct and appoint; and in default of any appointment as aforesaid, then to such person or persons for such estates, and in such shares, as by the laws of the state of Pennsylvania would be entitled to the same, as if the said Silas E. Weir had died intestate and seised and possessed thereof."

By the 13th and succeeding clause the said trustees are given full power to sell all or any part of said trust fund, and to reinvest the same as they think proper, to be held upon the same trusts, and for the same interests and purposes, and the testatrix directs the said fund shall be paid over to the said trustees as soon as practicable after her decease, " so that the income therefrom may accrue to the" person, "to receive the same with as little delay as possible."

It is certain that the trust vested in the company is an active one, and vests the legal estate during the life of the *cestui que trust* in the trustees. The trustees are to collect and receive the rents, issues, and interest, and pay over to the *cestui que trust*, during his life, only the net not the gross income, and they are invested with large powers, which can only be exercised by them as the holders and legal owners of the trust fund. The interest, therefore, of the *cestui que trust* is at best but a life estate, and this brings this case within all the decided cases, and as Silas E. Weir could not have gone into a court of equity, and demanded a transfer of the whole fund to himself, so neither can an attaching creditor, who simply stands in the shoes of his debtor, take the *corpus* of the fund.

There can be no doubt of the intention of the testatrix to secure the income of this fund to her son during his natural life, for the draftsman of the will has used nearly the identical language of the will of Dr. Thomas Parke, the effect of which was decided by this court in Vaux *v.* Parke, 7 W. & S. 19. That, however, was the case of real estate, and there was an additional provision tending to show that the testator intended to protect the estate devised in trust against the creditors of the *cestui que trust*, the son. Vaux *v.* Parke determined that the *cestui que trust* had not such an estate in the land as was bound by the judgment, which it was essential he should have, in order that it might be taken in execution and sold. In the present case the income for life could have been secured to the son by provisions against alienation and liability for debts, but this has not been done, and we are reluctantly obliged to defeat the intention of the mother to provide a maintenance for her son, by giving the income during the life of the son to the attaching creditor, who can receive from the trustees only what the son would be entitled to.

These trust companies are now daily performing the offices of guardians, executors, administrators, and trustees, and we deem

it proper to say that we shall strictly exact the same measure of care in the execution of their trusts that we do from individuals, and that we shall expect them to protect their *cestui que trusts* from every attempt to appropriate the funds to purposes for which they were not designed. We give the general warning without reference to any particular case.

Judgment reversed so far as regards the principal of the trust fund, and judgment entered upon so much of the verdict as consists of income, that is for $924.75, the costs to be paid by the plaintiff, the attaching creditor.