## Simon's Estate

*E. Spencer Miller*, for exceptants.
*Edwards F. Leiper, Jr.*, contra.

LADNER, J., January 13, 1939.—The facts bearing upon the exceptions briefly stated are:

Testator after directing the payment of his debts, funeral expenses, and certain legacies, gave the residue of his estate, one third to his son, Philip M. Simon, one third to his daughter, Catherine Simon, and one third to his son, Philip, and daughter, Charlotte Rebecca Barton, in trust for the sole and separate use of his daughter, Charlotte Rebecca Barton, "and after her death, if her husband survive her, so much of it as may be found necessary shall be applied for the proper support and maintenance of my grandson, Harry Barton, son of my said daughter, for and during his natural life. The same shall not be subject to anticipation by him, and be free from

liability for his debts, contracts and engagements, and upon his decease the principal estate together with any accumulation of income, shall vest in fee in his issue, per stirpes, but if he leaves no issue, then to my said son, Philip M. Simon, and my daughter, Catherine Simon, or their issue, per stirpes, in equal shares."

At the audit it was shown that at the date of the will (March 22, 1924), the daughter, Charlottee Rebecca, was married to Henry Clay Barton, but that thereafter, on March 10, 1930, she was divorced from him a. v. m., by decree of the court of Common Pleas No. 3 of Philadelphia County, March term, 1929, no. 9232. Upon this showing the learned auditing judge was asked to rule that the trust terminated. This he refused to do, holding that a divorce was not the equivalent of death and that the trust therefore continued. The first, second, and sixth exceptions charge this to be error.

Whether a sole and separate use trust may be terminated by an absolute divorce on the theory that a discoverture by divorce is equivalent to discoverture by death has been the subject of apparently conflicting decisions by our Supreme Court. In Koenig's Appeal, 57 Pa. 352, and Lee's Estate, 207 Pa. 218, the affirmative was held, while in Henry's Estate, 271 Pa. 416, the contrary. The able analysis of these cases by the learned judge of York County (Niles, P. J.) in Frey's Estate, 24 D. & C. 114, makes it unnecessary to review them again or to do more than say we approve of the distinction made by him which is to the effect that where the language of the whole instrument indicates the purpose of the testator or donor in creating the trust was to protect the wife's estate against her husband, that purpose may be regarded as fully accomplished when coverture ceases by divorce as by death. But where as in Henry's Estate, supra, a testator cautiously conditions the termination of the trust by the words "should my daughter become widowed by the *death* of her present husband" or by words of like import, the intention evidently is that he did not intend the trust to end if

his daughter became merely the subject of artificial widowhood as it was termed by Judge Ashman in Kelly's Estate, 16 Phila. 273, such caution being probably inspired by a fear that his wishes might be evaded, as e. g. Vetter's Estate, 308 Pa. 447.

The case before us is an exceedingly close one and falls in neither class, for in all the cases discussed the testator or donor made clear the condition upon which the trust should end. Not so here. There is no express provision for the termination of the trust at all but instead a mere extension of the trust on two conditions; (*a*) after the death of the wife, and (*b*) if her husband survives her. Nor is the duration of the trust fixed unless the words "after her death" imply a trust for life. We have therefore a trust that would be a dry trust except for the fact that it is specifically denominated a sole and separate use trust to be continued if after the death of the wife the husband survives. But as the learned counsel for the wife argues, since the husband is now divorced he is no longer her husband; hence can never survive her in that capacity. One of the contingencies upon which the extension of the trust depends cannot now possibly happen. The only purpose for which the trust was created has likewise disappeared. There being no active duties to be performed by the trustees does the statute of uses operate to execute the trust?

In Pennsylvania it is now settled law that a separate use trust cannot be created except for a married woman or one in immediate contemplation of marriage and that it ceases on discoverture and does not revive on a second marriage: Bispham's Principles of Equity (10th ed.) sec. 106, and cases there cited.

A sole and separate use trust drawn as here, which imposes no active duties and which would be executed by the statute of uses if it were limited to any other than a married woman, has been regarded in Pennsylvania as untouched by the statute of uses for the reason that the

protection intended by the donor of the trust demands its existence: Lancaster v. Dolan, 1 Rawle 231 (1829). Pullen v. Rianhard, 1 Whart. 514 (1836). Though in Kinsel v. Ramey et al., 87 Pa. 248 (1878), a sole and separate use trust imposing no active duties upon the trustees was held executed by the statute of uses, neither the doctrine of nor the cases of Lancaster v. Dolan, supra, and Pullen v. Rianhard, supra, are mentioned in the Kinsel case, nor does it appear from the report if the married woman had become discovert.

But whether the earlier doctrine is to be regarded as overruled or not it would seem reasonably clear that since the only reason an inactive sole and separate use trust can be held to be outside of the statute of uses is the protection intended during coverture, then, when coverture ceases, whether it be by death or divorce of the husband, the statute of uses must apply. This is in harmony with the general rule that a trust created for a special purpose, and evincing no clear intent to continue it for any other purpose, terminates when the purpose has been accomplished and nothing remains for the trust to act on: Rea v. The Girard Life Insurance Annuity & Trust Co., 17 Phila. 357, 16 W. N. C. 48 (Thayer, P. J.) ; Dodson v. Ball, 60 Pa. 492, 497. Nor can it be urged that the trust must continue to support the estate in remainder as in Harrison's Estate, 18 Dist. R. 604 (affd. 227 Pa. 134), for there is now no estate in remainder, it having been contingent upon an event that can never happen; viz., the survivorship of the husband which divorce has made impossible.

The statute of uses thus ends the trust and it remains to be determined whether Charlotte Barton has a life estate or an absolute estate. If she has no absolute estate then after her death an intestacy results of one third of testator's estate. This question, owing to the peculiar language of the will, cannot be regarded as free from difficulty. On the one side it can be said there is no express limitation for life. Such limitation here must if it exists

rest solely on the implication to be drawn from the words "after death". On the other hand, the trust set up was founded on no distrust of the daughter's improvidence, for she was designated as one of the trustees, and if her estate is held to be for life only, then an intestacy results as to the remainder—a construction not to be favored.

Many cases are to be found in which, upon the termination of a sole and separate use trust, an absolute estate is held to vest in the wife even when such a trust is expressly limited for life, but in all of these there is either some power of appointment given to the wife as in Dodson v. Ball, supra, or a grant to her heirs, which by analogy to the rule in Shelley's Case, 1 Co. Rep. 88, 76 Eng. Repr. 199, can be held to vest in the life tenant, as in Steacy v. Rice, 27 Pa. 75, a fee. These cases are interestingly reviewed in Dodson v. Ball. Perhaps the closest case to this is Harrison v. Brolaskey, 20 Pa. 299, but that case was said to be "not the law" in The Girard Life Insurance & Trust Co. v. Chambers, 46 Pa. 485, 490, although that statement was in turn regarded in Dodson v. Ball as too sweeping.

Happily, Charlotte R. Barton's brother and sister (being the only parties now in interest, whether under the intestate law or the will) have settled the question amicably and by stipulation filed after the argument and which will be found annexed to the record, have agreed that their sister Charlotte should have an absolute fee simple estate in the trust res. It is, therefore, unnecessary to decide the question or do more than confirm their agreement which we now do.

The rest of the exceptions relate to a surcharge of the funeral expenses found by the learned auditing judge to be excessive. This surcharge was made at the instance of the guardian ad litem for the possible unborn remaindermen (children of Harry Barton, Charlotte Barton's son). We understand that Charlotte Rebecca Barton as well as her brother and sister who share in the residue of the estate have approved the funeral expenditures in the

amount for which credit is claimed in the account. Since our sustaining the exceptions to the refusal to terminate the trust results in Charlotte Rebecca Barton getting an absolute estate to the exclusion of her son and his issue, there is no need now to determine whether the learned auditing judge erred or not in making this surcharge.

Accordingly, these exceptions thereto are sustained solely because of such approval by *all* parties in interest.

All the exceptions are sustained.