## Steacy *versus* Rice.

Where a testator devised to a trustee and the heirs of the trustee certain real estate, for the *separate* use of his daughter, then a married woman, during her *life*, and after her death, to the heirs of his said daughter in fee simple, and the daughter afterwards became discovert, *Held*, that, according to the rule in Shelly's Case, the daughter had an estate in fee simple, which would pass by her deed to her alienee.

A trust for a married woman is a *special* trust, and such are not within the statute of uses. But when she becomes discovert, the special trust for her separate use ceases and the legal estate vests fully in her.

Where an estate is devised to trustees for a particular purpose, the legal estate vests in them as long as the execution of the trust requires it and no longer.

The trustee took the legal estate for the use of the daughter for life, and for the heirs afterwards, but being a mere *dry* trust for the heirs, the remainder was executed in them as a *legal* estate under the statute of uses.

When the purpose of the special trust for the use of the daughter had been satisfied by the death of her husband, it stood then for the sole benefit of a single woman, and was immediately executed by the statute of uses and became a legal estate in her.

ERROR to the Common Pleas of *Lancaster county.*

This was an action of ejectment by Samuel Rice against John Steacy and Gainer Pierce, in which the jury found the following special verdict:—

"That Martin Herr, of Strasburg township, Lancaster county, being seised of a certain messuage or tenement and parcel of land, situate in the borough of Strasburg, containing 5 acres and 61 perches, strict measure, in October 1805 made his last will and testament, proved April 27, 1810, and letters testamentary issued to Martin Herr, Jr., and Samuel Herr, executors, wherein he directed, *inter alia*, as follows:

"'Item: I give and devise to my loving son, Daniel Herr, and his heirs, in trust for the use of my daughter, Martha Foutz (who intermarried with Martin Foutz) during her life, all my real estate situate in the village of Strasburg, in the county of Lancaster aforesaid; and it is my will, and I order and direct that the said real estate, hereby devised to my said daughter, Martha Foutz, is for her own separate and private use, during her natural life, and that it shall not be liable or subject in any manner or way to the debts of her said husband, Martin Foutz, or subject to his will or pleasure; and after her death I give and devise the said real estate to her heirs in fee simple.'

"That Martin Foutz, husband of Martha Foutz, died in the year 1821.

"That said Martha Foutz died in the year 1851; that Elizabeth Rice, her daughter, died in September, 1847, leaving issue two sons, one of whom is the present plaintiff, Samuel Rice.

" That the said Martha Foutz and Elizabeth Rice, on the first day of April, 1847, for the consideration of $1445, by their deed with covenant of general warranty granted and conveyed to John Steacy, his heirs and assigns, in fee simple, the above specified tract of land. Said deed being acknowledged on same day, and recorded on 6th March, 1848.

" And we further find, that the said deed is not impeached on the ground of fraud, and was given for a full consideration.

" If, on the above facts, plaintiff is entitled to recover, then we find for the plaintiff; if the contrary, then we find for the defendants."

The court below (LONG, P. J.), after reciting the facts, delivered the following opinion, and entered judgment for the plaintiff.

" The question which arises in this case is, what estate did Martha Foutz take under the will referred to. It is contended on behalf of the defendant, that at the time of the conveyance by Martha Foutz and Elizabeth Rice to John Steacy, one of the defendants, on the 1st day of April, 1847, Martha Foutz being then discovert, was seised of a legal estate of freehold, and that the same instrument creating this estate, containing a limitation over to her heirs unqualifiedly, she possessed at the time of such conveyance an estate in fee simple; that the entire estate vested in her at the time of her husband's death; that Daniel Herr took a general trust, not an active one; that the object of the testator creating the trust was to protect the estate from the contracts of her husband, or the payment of his debts, &c.; and that, the estate being given for her sole and separate use, upon the death of her husband it vested in her absolutely. If this was the main intent of the testator, the position taken by the defendants is no doubt correct; but if it manifestly appears from the face of the will, as the plaintiff alleges that it does, that it was the intention of the testator merely to give Martha Foutz a trust life estate, and that her heirs were to receive a contingent estate in remainder, after her death, then a different result would follow; for an express estate for life is never enlarged to an estate of inheritance, but for the purpose of effectuating the general intent of the testator.

" From an examination of the provisions of the will, I am unable to resist the conviction that the intent of the testator was to give to Martha Foutz merely a life estate. It appears to me, that the testator appears, in the very devise of this property now in dispute, to have studiously endeavoured by the wording of that devise, to guard against any other construction; for we find that in giving the estate to David Herr, he directs that it shall be during the life of Martha Foutz; and when in the same clause he says it shall be during the life of Martha Foutz, and that it shall be for her own support, &c., he also says it shall be for her

[Steacy v. Rice.]

natural life; and then again, in conclusion, he says, after her death he gives and devises the said real estate to her heirs in fee simple. It therefore being my opinion that Martha Foust had but a trust life estate in the premises, it is unnecessary to enter into an examination of the other questions which were so elaborately discussed in the argument of this case; for according to the rule of law, when the estate limited to the ancestor is merely an equitable or trust estate, and that to his heirs, &c., carries the legal estate, they will not incorporate into an estate of inheritance in the ancestors, as (in general) would have been the case if they had been both of one quality, that is, both legal or both equitable; and therefore direct judgment to be entered for the plaintiff."

Errors assigned: 1. The court erred in deciding that Martha Foutz had but an equitable life estate.

2. The court erred in directing judgment to be entered for the plaintiff.

Frazer and Kline, for plaintiff in error.—The rights of the parties depend upon the clause of the will recited in the special verdict. We submit two propositions:—

1. That at the time of the conveyance to John Steacy in 1847, Martha Foutz being discovert, was seised of a legal estate of freehold.

2. The same instrument containing a limitation to her heirs unqualifiedly, she took an estate in fee simple.

What was the character of this trust? Whether the trustee takes the legal estate depends on whether any duty was imposed which required it to be vested in him.

If there was not, the legal ownership passes to the beneficiary: 2 Jarm. on Wills, p. 199.

In the case of a simple or dry trust, the statute of uses (Hen. 8) operates, and the possession will be executed in the beneficiary, notwithstanding a contrary intention in the instrument creating the estate: Lew. on Tr. 102; Carwardine v. Carwardine, 1 Eden 36. The statute operates on executed trusts, but not on executory ones: Glenochy v. Bosville, Cas. Temp. Talb. 5; 2 Kelly 307.

This trust imposes no duty on the trustee; the limitations are perfect. The estate was devised to the trustee for a particular purpose, and was vested in him as long as that purpose required it to remain there: 2 Crabb R. Prop. § 963; Mark v. Mark, 9 Watts 410. The purpose in this case was to protect against the husband. That purpose only existed during the life of the husband; after his death the trust ceased, and the estate vested in the beneficiary.

A separate use can exist only during coverture: McQueen on

*Hus. and Wife,* 306; 66 *Law Lib.* 94.    The separate use lasts only during the impending coverture; the *feme* after that becomes *sui juris*: Smith *v.* Starr, 3 *Wh.* 62; Hamersly *v.* Smith, 4 *Id.* 126; Quigley *v.* Commonwealth, 4 *Harris* 386; Harrison *v.* Brolasky, MS. March 21, 1853, per Lowrie, J.; Wetherill *v.* Mecke, *Bright. Rep.* 136.

It is said the trust was during life.    This is usual.    But a separate use can exist only during coverture: *Atherley on Mar. Set.* 323.    We therefore submit that in 1847 Martha Foutz was seised of a legal estate of freehold.    If so, the second proposition follows as a legal sequence; the limitation to her heirs being general and unqualified, the estate was an absolute fee simple.

The devise is, " After her death, I give and devise the said real estate to her heirs in fee simple."

This limitation invites to action the rule that where an estate of freehold is limited to a person, and the same instrument contains a limitation, either mediate or immediate, to his heirs, or the heirs of his body, the word *heirs* is a word of limitation, *i. e.*, the ancestor takes the whole estate comprised in this term : 2 *Jarman on Wills,* 241 *b.*; Hileman *v.* Bouslaugh, 1 *Harris* 352; George *v.* Morgan, 4 *Harris* 95.

Whoever takes in the character of heir, takes in the quality of heir—that is, he takes not by purchase, but by descent: Jones *v.* Morgan, 1 *Bro.* 206.

*Stevens* and *A. Herr Smith,* for defendants in error.—Under the devise of Martin Herr, deceased, the defendant contends Martha Foutz took a life estate, and her heirs a contingent remainder.    This position he maintains is evident,

1. From the *express words* of the will.    The intent of the testator is the governing rule of construction in wills, even when the rule in Shelley's Case invites to action : *Fearne on Con. Remainders* 186; 4 *Kent* 216; 3 *Bin.* 149, 150, 154; Miller *v.* Lynn, 7 *Barr* 445; Hileman *v.* Bouslaugh, 1 *Harris* 351, 352; George *v.* Morgan, 4 *Harris* 105.

In further support of this position, the court held in Carter *v.* McMichael, 10 *Ser. & R.* 431, that the *minor* intent must yield to the *main* intent, and in same book, p. 298, it is held that " an express estate for life is never enlarged to an estate of inheritance, but for the purpose of effectuating the general intent of the testator."

2. Because the rule in Shelly's Case does not apply to a trust or equitable estate: *Fearne on Remainders* 35*; 4 *Kent* 216, 230.

As to the soundness and reason of this distinction it is to be observed, that trusts are creatures of confidence, and totally different from legal estates.    A court of equity, when it deviates from these rules, does not depart from any law by which it was

[Steacy *v.* Rice.]

ever bound.   It only exercises the conscience and discretion to which trust estates were originally and necessarily subject: *Fearne* 90\*, 94\*.

In this case the testator appointed a special trustee instead of devolving the duty on his executor.

3. Because under the rule the estate to the ancestor, and that to the heirs, must be of the same quality: 4 *Kent's Com.* 215. Where the estate to the ancestor is an *equitable or trust estate,* they will not incorporate into one estate in the ancestor as they would if both were of the same quality: *Fearne* 34; 4 *Kent* 229, 230; Bagshaw *v.* Spencer, 2 *Atk.* 583.   Lord HARDWICKE says, "Nothing which has happened since the testator's death, can vary the case; but it must be the same as if the first devisee came for a decree."

But the plaintiff in error urges that the trust estate ceased when the first devisee became discovert.   But it is given *expressly to her for life*—and *after her death* to her heirs in fee simple.

If an estate be given in trust with a contingent remainder, the fee simple vests in the trustee, it being necessary to support the contingent remainder, even if no duty be assigned to the trustee: 2 *Moo. & Scott* 113; 2 *B. & A.* 84; 6 *B. & C.* 420; 4 *M. & W.* 421; *Jarman on Wills* 228, 229.

Here is an equitable life estate given in plain terms to Martha Foutz, and after her death contingent legal remainder to whomsoever might then be her heirs.   By express limitation the trust continued during her life and upheld the remainders in fee, and his death could not enlarge her estate.

A feme covert is limited in her power of disposition of her estate, to the will or deed by which she becomes entitled to it: 26 *Law Lib.* 172; *Atherley on Mar. Set.* 331, 335; Thomas *v.* Folwell, 2 *Wh.* 11; Lancaster *v.* Dolan, 1 *R.* 248; 2 *Kent* 165, 166, notes; 17 *J. R.* 584.

The cases cited from 3 *Wh.,* 4 *Id.,* and 4 *Harris,* are not in conflict with the above principles and authorities.   They establish, what is not controverted, that a repugnant qualification or a restriction inconsistent with a general power of disposal is inoperative.

The statute of uses is in no wise applicable, because it would be contrary to the intention of the testator, that the *cestui que use* should become the legal owner.

Ashhurst *v.* Given, 5 *W. & Ser.* 328, where Holdship *v.* Patterson, 7 *Watts* 551, is quoted with approbation, and the power of a benefactor to guard his beneficiary against his own improvidence maintained.

The reason for the rule in Shelly's Case has, even in England, long since ceased, and in Pennsylvania never did exist: Miller *v.* Lynn, 7 *Barr* 445.

To enable the plaintiff in error to recover, three arbitrary rules must be made to operate in opposition to the intention of the testator :—

1. The death of the husband must divest the fee vested in the trustees expressly for the life of the devisee.

2. The statute of Henry 8 must not only destroy the trust but destroy the equitable character of the life estate.

3. The rule in Shelly's Case must be made to operate on estates different in their nature at their creation, and enlarge a life estate with contingent remainders into a fee simple, with the necessary destruction of the remainders—all in the face of the clear intention of the testator.

The opinion of the court was delivered by

BLACK, J.—The testator devised to a *trustee and the heirs of the trustee* all his real estate in Strasburg, for the *separate* use of his daughter (a *married* woman) during her *life,* and after her death he gave and devised the same real estate to the *heirs of his said daughter* in *fee* simple. The will was dated in 1805 and proved in 1810. The daughter became a widow in 1821, and died in 1851, leaving as her heirs two grandsons, of whom the plaintiff below is one. In 1847 she conveyed the land in fee to the defendant below, who has possession and claims title under the deed. The plaintiff claims as devisee of the remainder under the will of his great-grandfather.

According to the rule in Shelly's Case the daughter had an estate in fee simple. But the plaintiff contends that it is not within that rule, because the life estate to the daughter is equitable and the remainder to the heirs legal. If this be true in point of fact it is sound in law; for the two estates cannot unite as an estate of inheritance in the first taker unless they are both of the same quality.

The legal fee is devised to the trustee. It is given to him and his heirs, and comprehends the whole estate. By the terms of the will there was devised to the heirs an equitable remainder after the determination of the equitable life estate given to their ancestor. The trustee took the legal estate for the use of the testator's daughter during her life and for the use of her heirs afterwards. But for the heirs it was a mere dry trust, and the remainder was executed in them as a legal estate under the statute of uses. A use executed by the statute is a legal estate to all intents and purposes, as much as if it had been given by the instrument creating the estate without the intervention of a trustee. Where lands are given in special trust for the life of one person, and after his death in general trust for the heirs of the same person, the latter use being within the statute, and the former not, the estates are of different qualities, and the rule in Shelly's Case

[Steacy v. Rice.]

cannot apply. Such precisely was the case of Lady Jones v. Lord Say and Seele (1 *Equ. Cases, Abr.* 383), where the word *heirs* was held for that reason to be a word of purchase and not of limitation. The remainder in this case was therefore legal, and if the life estate was not also legal, the opinion of the Common Pleas that the first taker had but a life estate was right.

Special trusts are not within the statute of uses : and a trust to hold for the separate use of a married woman is special (7 *T. R.* 652). If, therefore, the testator's daughter had died during her coverture, this case would have been clear enough. But her husband died in 1821. When she became sole, the trust for her separate use ceased ; it was no longer a special trust, and the legal estate vested fully in her. It was held by this court in Mark v. Mark (9 *Watts* 410), that where an estate was devised for the use of children, there being a special trust until the youngest came of age, the children acquired the legal title when that event happened. This is in accordance with the doctrine in England where it is laid down (1 *Barn. & Cress.* 360), as a general rule, that when an estate is devised to trustees for a particular purpose the legal estate vests in them as long as the execution of the trust requires it, and no longer.

Here, then, we have the case of a devise giving an equitable estate for life to one person, and remainder also equitable to her heirs. But the remainder immediately became an executed legal estate in the heirs, while the life estate was executed not immediately, but some time afterwards. 'Both were legal estates at the time of the first taker's death, and at the time of her conveyance in fee to the defendant. Does this state of things leave the case within the exception which says that the two estates cannot unite unless they be of the same quality ? It is somewhat curious that no direct authority can be found on this point.

A dictum of Lord HARDWICKE, in Spencer v. Bagshaw (2 *Atk.* 270), has been cited to the effect that nothing which happens after the death of the testator can change the estates of the devisees. But that case can hardly be considered as authority, for it has been in effect overruled by several later decisions, and it has not stood the test to which the criticisms of the text writers have subjected it. (*Fearne on Cont. Rem.* 121; *Hays on Ent. Tab.* 2, *No.* 47; 2 *Kent's Com.* 219.) Besides, Lord HARDWICKE was speaking of changes produced by the acts of the parties, which made a question not at all analogous to this.

This is not a question of interpretation, in which the object is to get at the meaning of the testator. If it were, and if the will afforded us no other means of judging, we might consider the difference in the qualities of the two estates, though existing only for a time, as a strong argument for the plaintiff. But we are considering the application of a rule of law—a rule which often disregards the in-

tention, however clearly expressed. We have no doubt what was meant by this will. Like ninety-nine in a hundred of the cases to which the rule in Shelly's Case has been held to apply, it was the purpose of the testator to give the first object of his bounty a life estate merely. But the law will not treat that as an estate for life which is essentially an estate of inheritance, nor permit any one to take in the character of heir unless he takes also in the quality of heir. It does not stand with the interest of the state, that lands so devised should be tied up from alienation during the life of the first taker and the minority of his heirs.

It is to be observed, that this case is literally within the rule as laid down by the judges in Shelly's Case. The testator's daughter *took* an estate for life under the will, and in the same instrument there is a limitation of the fee to her heirs by way of remainder. The life estate she took was legal after the special trust had ended, and there was then nothing in the quality of the two estates to prevent them from uniting. I have said that a use executed under the statute is a legal estate. Can it make any difference that it was not executed immediately, if it was executed at all, within the period of its duration? I cannot see why it should. Chancellor KENT (2 *Com.* 215) says the rule applies whether the ancestor takes the freehold by express limitation, by resulting use, or by implication of law. His name will perhaps establish any legal proposition not opposed by the judicial authorities, and if he be right in this, it is manifest that the words of Lord HARDWICKE have been understood by the plaintiff's counsel in too broad a sense.

On the whole, we are of opinion that the testator's daughter having taken under the will what became after the death of her husband a legal estate for her life, and the remainder in fee being also legal and limited to her heirs by the same instrument, the two estates united and became a fee simple estate in her, which therefore she had good right to convey at the date of her deed to the defendant.

> Judgment reversed, and judgment here for the plaintiff in error (who was the defendant in the Common Pleas), with costs of suit.

LOWRIE, J., delivered the following concurring opinion.—This is a devise to one in trust for the separate use of the testator's daughter, a married woman, during her life, and then to her heirs in fee. The daughter became single, and then she and her daughter and only child joined in selling it. She outlived her daughter, and died leaving grandchildren, and one of them is now claiming that the deed of his mother and grandmother could convey only an estate for the life of his grandmother. Is it so?

Strike out the trust, and it is a devise to one for life with re-

mainder to her heirs, which is plainly a fee simple. Now the trust was struck out by an event involved in the nature of the gift, that is, when the testator's daughter became sole; for then its purpose had been satisfied, and after that the trust stood for the sole benefit of a single woman, and was immediately executed by the statute of uses, and became a legal estate in her.

This is therefore an estate in trust for the daughter during coverture, with remainder to her for life, and remainder in fee to her heirs. It is a gift of a legal freehold to her and them, in the same will, a limitation of the fee to her heirs, which makes a fee simple in her : 13 *State Rep.* 351. And we need not say what would be the effect if the estates were of different qualities. When, therefore, she sold the land to Steacy, she had full right to sell.