## WILLIAM LITTLE v. P. D. WILCOX ET AL.

ERROR TO THE COURT OF COMMON PLEAS OF BRADFORD COUNTY.

Argued March 15, 1888—Decided March 26, 1888.

An agreement between Sheffield, the father, and Rollin, the son, provided that the homestead of the father should "be held in trust for the said Rollin during his life and for his heirs after his decease, upon the son complying with and fulfilling" certain covenants for his father's maintenance and comfort, and concluded: "At the decease of the said Shef-

field the said Rollin may continue to occupy and enjoy said property during his natural life and at his death the same shall go and be held by the heirs of said Rollin and their assigns forever, in the same manner as if the title had now passed subject to a lien for the performance of the covenants hereinbefore contained."

The son died in the lifetime of the father, leaving a daughter and three sons and a will devising the homestead to the sons, charged with the support of the daughter. On ejectment by the daughter to recover an undivided one fourth of the land: *Held,*

1. That, so far as it related to Rollin, the instrument created a trust on condition that the beneficiaries keep and perform the covenants contained therein.

2. That, as the legal estate was held by the donor as well for his own protection as for the benefit of the cestuis que trustent, he had the right of re-entry for condition broken, and the trust was unexecuted by the statute of uses during the equitable life estate.

3. The concluding provisions of the instrument, in effect, gave a vested remainder to the heirs of the life-tenant enjoyable in possession at his death, subject only to a lien or charge securing the performance of the condition.

4. That the estate of Rollin being an equitable estate on condition unexecuted during his lifetime, while the remainder to his heirs was executed and in effect if not in form a legal estate, the two did not coalesce in Rollin under the rule in Shelley's Case so as to constitute a fee-tail, enlarged to a fee and passing under his will; wherefore, the plaintiff was entitled to recover.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK and WILLIAMS, JJ.; TRUNKEY, J., absent.

No. 332 January Term 1888, Sup. Ct.; court below, No. 406 December Term 1887, C. P.

On May 9, 1887, in an amicable action of ejectment by William Little, committee of Harriet Wilcox, a lunatic, against P. D. Wilcox, H. D. Wilcox and F. L. Wilcox, to recover an undivided one fourth interest in a tract of 240 acres, more or less, in Albany township, the following were the facts admitted by an agreement in the nature of a case stated:

Rollin Wilcox was the son, an only child, of Sheffield Wilcox, and in 1856 all his property had been sold at sheriff's sale. He was still indebted to about $10,000, a large part of which, to wit: $7,271.73 was in judgments in the Court of Common Pleas of Bradford county, due and ready for collection, and he had four children—P. D. Wilcox, H. D. Wilcox, F. L. Wilcox, the defendants, and Harriet Wilcox, a lunatic, whose com-

mittee, William Little, was the plaintiff, when the following agreement was made with his father Sheffield Wilcox:

This article of agreement, made the 27th day of April, 1861, between Sheffield Wilcox of Albany township, Bradford county, Pa., and Rollin Wilcox of the same place, witnesseth: That the said Sheffield Wilcox, in consideration of the agreement hereinafter contained to be fulfilled and kept on the part of the said Rollin Wilcox, his heirs, executors and administrators, has agreed and hereby does agree that the real estate of him, the said Sheffield, situate in Albany township aforesaid, known as the homestead of him, the said Sheffield, containing 220 acres, more or less; also 20 acres nearly adjoining the above which was conveyed to him by the sheriff of Bradford county as the property of said Rollin Wilcox, shall be and the same is hereby declared to be held in trust for the said Rollin Wilcox during his life, and for his heirs after his decease, upon the said Rollin Wilcox complying with and fulfilling the agreement contained, by himself or his executors, administrators or heirs; that is to say, the said Rollin Wilcox covenants and agrees that the said Sheffield Wilcox, his father, may reside with him at the mansion house upon the homestead aforesaid so long as he shall live, and to provide him with all needful food and clothing according to his usual and customary requirements, and also with medicine and medical attendance, with all needful care in sickness and old age; or, if the said Sheffield Wilcox shall choose to live at the farm-house on the homestead farm and near to the mansion house, that he may do so, and shall be there supported, together with one other person, his wife or housekeeper, so long as he shall live; that he shall have a suitable garden spot together with four acres of land to work on the farm where he shall choose; he shall have two cows provided and kept for his use, also the use of a horse when he shall desire it for his own use; also two beds and bedding if he shall require it. If the said Sheffield Wilcox shall choose to live separate from the family of said Rollin and in the farm-house aforesaid, then the support which he and said one other person shall receive shall be understood to mean such support and maintenance as may be needful beyond what shall be yielded by the use of the cows, garden spot and four acres of land. And the said Rollin Wilcox further agrees to

pay, satisfy and discharge all liens now against said property, and to keep the said Sheffield indemnified against the same and the property from being sold thereon. At the decease of the said Sheffield, the said Rollin may continue to occupy and enjoy said property during his natural life, and at his death the same shall go and be held by the heirs of the said Rollin Wilcox and their assigns forever, in the same manner as if the title had now passed subject to a lien for the performance of the covenants hereinbefore contained to be performed by the said Rollin Wilcox, his heirs, executors and administrators. Witness our hands and seals the day and year aforesaid.

SHEFFIELD WILCOX. [SEAL.]

ROLLIN WILCOX. [SEAL.]

This agreement was acknowledged by both parties on April 28, 1861, and recorded on December 17, 1863.

Rollin Wilcox, having kept and performed the covenants of said agreement on his part during his lifetime, died in the spring of 1865, leaving to survive him the four children above named, and a will duly admitted to probate, which was as follows:

I, Rollin Wilcox of Albany, county of Bradford, state of Pennsylvania, being of sound mind, memory and understanding, do make this my last will and testament in manner following: I order that all my just debts, funeral expenses and charges of proving this my last will be in the first place fully paid and satisfied, and after payment thereof and every part thereof, I give and bequeath my messuage, lands, tenements and hereditaments whatsoever I own and all my personal property and all the rents and debts due me, to my three boys, Porteus D. and Huston D. and Francis L., to share equal, and my girl Harriet to have her support out of the property; and I do hereby nominate, constitute and appoint Porteus D. and H. D. Wilcox as my executors of this my will the first day of April, 1865.

After the death of Rollin Wilcox, the covenants on his part, in the contract hereinbefore set forth, were duly kept and performed by his said children or heirs until the death of Sheffield Wilcox on November 12, 1869, who had lived upon said lands during his lifetime and at his death made no other disposition thereof.

If the court should be of the opinion that Harriet Wilcox acquired title from Sheffield Wilcox to an undivided one fourth interest in said lands, judgment was to be entered for the plaintiff for such interest; otherwise, etc.

On November 2, 1887, the court, SITTSER, P. J., filed the opinion and order:

By the writing presented for construction Sheffield Wilcox declares the land which is the subject of this ejectment, to be held by him "in trust for the said Rollin Wilcox during his life and for his heirs after his decease."

This declaration of trust is made in consideration of certain things to be done and performed by Rollin Wilcox, his executors, administrators or heirs, viz.: the support, etc., of Sheffield Wilcox during his life; the case stated sets forth that these things were done.

If a conveyance had been made by Sheffield Wilcox to Rollin Wilcox during his life and for his heirs after his death, there can be no doubt but that the word "heirs" would be considered a word of limitation and not of purchase and Rollin Wilcox would take the fee. But it is contended that this writing is a declaration of trust and that in such instruments the rule in Shelley's Case does not apply. It is said in Washburn on R. P., 455, 182, "And this rule," the rule in Shelley's Case, "applies alike to equitable as to legal estates, in cases of executed trusts. But it does not apply to executory trusts, especially trusts in marriage settlements; nor in any case where it is intended that the tenant for life shall not have a right to cut off the estate in remainder:" See Perry on Trusts, ch. 12, p. 325; 4 Kent Com., 220.

A trust is said to be executory when some further act is requisite to be done by the author of the trust or his trustees, to give it full effect. The trust in this case was executed. There was nothing. further to be done by Sheffield Wilcox to give effect to the writing or to vest an interest under the trust, and we are compelled to give the word "heirs" its appropriate effect as a word of limitation. This view is confirmed by the closing part of the writing, where it is said that at the decease of the said Sheffield the said Rollin may continue to occupy and enjoy said property during his natural life and at his death

the same shall go and be held by the heirs of the said Rollin Wilcox and their assigns forever, in the same manner as if the title had now passed subject to a lien for the performance of the covenants hereinbefore contained.

"In the same manner as if the title had now passed." To whom? The plaintiffs contend that this means, as if the title had now passed to the heirs of Rollin Wilcox. We do not so read it. We think it means in the same manner as if the title had now passed to Rollin to occupy and enjoy said property during his natural life and after his death to go to and be held by his heirs. Being of opinion that Rollin Wilcox, under the contract and facts set forth in the case stated, took a fee from the said Sheffield Wilcox, we direct judgment to be entered for the defendants on the case stated.

Judgment having been entered in favor of the defendants, in accordance with the foregoing order, the plaintiff took this writ, assigning said order as error.

*Mr. Isaiah McPherson* (with him *Mr. E. J. Angle, Mr. H. N. Williams, Mr. N. C. Elsbree,* and *Mr. R. H. Williams*), for the plaintiff in error:

1. The purpose of this trust was to prevent the inheritance from vesting in Rollin Wilcox in his lifetime, and to protect it for his children or for those who would be his heirs at his death. The trust was therefore unexecuted by the statute of uses and remained but an equitable estate in Rollin until his death: 1 Perry, Trusts, § 305; Barnett's App., 46 Pa. 399; Dodson v. Ball, 60 Pa. 496; Rife v. Geyer, 59 Pa. 393. The legal title therefore, remained in Sheffield until it passed by operation of law on the death of Rollin, to the parties to this suit.

2. The rule in Shelley's Case no doubt is applied to equitable estates as well as to legal estates, in the cases of executed trusts; but the two estates, the freehold and the remainder, must be both legal or both equitable. Where one is legal and the other equitable, the rule does not apply and the heirs take as purchasers. Thus, if the legal estate is given to A. in trust for B. for life, and the legal remainder to the heirs of B. at his decease, the rule cannot apply, for the legal and equitable estates cannot so coalesce that B. can take a fee, either legal

or equitable: 1 Perry, Trusts, § 358; 2 Washb., R. P., 557; Bacon's App., 57 Pa. 512. Nor is the rule in Shelley's Case applied, even in executed trusts, to vest a fee or a fee-tail in the first taker, unless the word "heir" is used as a word or term of succession and not a mere designation of persons: 1 Perry, Trusts, § 358.

3. The intention in a deed is as much the governing rule of construction as in a will, except that the former requires words of limitation to create an estate of inheritance: Phillips's App., 93 Pa. 45; Huss v. Stephens, 51 Pa. 282. In the construction of wills, the circumstances of the testator, his family, the amount and character of his property, etc., should be taken into consideration to aid in discovering the meaning: Postlethwaite's App., 68 Pa. 478; Follweiler's App., 102 Pa. 583. The language of this instrument is repugnant to the idea or intent of any descent from Rollin; on the contrary, it shows clearly an intent that the title to Rollin's heirs should go from Sheffield himself: Guthrie's App., 37 Pa. 9; Physick's App., 50 Pa. 128; Criswell's App., 41 Pa. 288; Campbell v. Jamison, 8 Pa. 498; Cockin's App., 111 Pa. 26; Huss v. Stephens, 51 Pa. 282.

*Mr. Stanley W. Little*, for defendants in error.

1. The authorities declare with one voice that when the entire beneficial interest is in the cestui que trust, and no active duties are imposed upon the trustee, the trust is executed: Kinsel v. Ramey, 87 Pa. 248. The contract says: "His said property shall be and the same is hereby declared to be held in trust for the said Rollin Wilcox during his life and for his heirs after his decease." Nothing more is said about the trust and no duties of any description are imposed upon the trustee. If human language can create a dry or executed trust, it has done so in this case.

2. The interpretation of an instrument must be based not on what the party meant, but on what is the meaning of his words. The word "heirs" is always presumed to have been used by a testator in its technical sense, and is to be regarded as a word of limitation and not of purchase, unless it very clearly appears that it was used and intended in a different sense: Cockin's Appeal, 111 Pa. 26; Guthrie's App., 37 Pa.

10. The presumption arising from the use of technical words of limitation may be rebutted, but it must be by nothing short of affirmative evidence of a contrary intent so clear as to leave no reasonable doubt: Physick's App., 50 Pa. 136. Because the testator's intent may be defeated is no reason why the rule in Shelley's Case should not be applied: Perry, Trusts, 438; but there is nothing in the writing to show that the application of the rule would defeat the settler's intention.

3. If we follow the plaintiff outside the writing in search of an interpretation, the first thing discovered is the estoppel of the three sons of Rollin Wilcox. Having proved the will of their father, accepted its provisions and enjoyed its bequests for more than twenty-one years, they are now estopped from shaking off the charge imposed by the testator: Benedict v. Montgomery, 7 W. & S. 238. The second thing apparent is, that this was no spendthrift trust, for the cestui que trust agreed to " pay and satisfy all liens now against said property, and to keep said Sheffield indemnified " therefrom. The only anxiety exercised by the settler as to creditors, was that he should be protected from his own.

OPINION, MR. JUSTICE STERRETT:

The controlling question is, whether upon the facts recited in the case stated, Rollin Wilcox died seized in fee of the land in controversy. If he did, the title thereto passed by his will in 1865 to his three sons, defendants in this case, and judgment was rightly entered in their favor. On the other hand, if the declaration of trust embodied in the agreement of April 27, 1861, between Rollin Wilcox and his father, gave the former merely an equitable life estate on condition, he had no interest in the land on which the will could operate, and hence, upon his decease, the title vested in possession in his four children as tenants in common, and the plaintiff, representing one of them, was entitled to judgment for the undivided one fourth of the land.

As expressed in the agreement referred to, the consideration for the declaration of trust was the following covenants of Rollin Wilcox, to be kept and performed by himself, " his heirs, executors, and administrators," viz.: " the said Rollin Wilcox covenants and agrees that the said Sheffield Wilcox,

his father, may reside with him at the mansion house upon the homestead aforesaid, so long as he shall live, and to provide him with all needful food and clothing according to his usual and customary requirements, and also with medicine and medical attendance, with all needful care in sickness and old age; or, if the said Sheffield Wilcox shall choose to live at the farm-house on the homestead farm and near to the mansion house, that he may do so, and shall be there supported, together with one other person, his wife or housekeeper, so long as he shall live; that he shall have a suitable garden-spot together with four acres of land to work on the farm where he shall choose; he shall have two cows provided and kept for his use, and also the use of a horse when he shall desire it for his own use; also two beds and bedding if he shall require it. If the said Sheffield Wilcox shall choose to live separate from the family of said Rollin and in the farm-house aforesaid, then the support which he and said one other person shall receive, shall be understood to mean such support and maintenance as may be needful beyond what shall be yielded by the use of the cows, garden-spot, and four acres of ground. And the said Rollin Wilcox further agrees to pay, satisfy, and discharge all liens now against said property, and to keep the said Sheffield indemnified against the same and the property from being sold thereon."

The trust referred to is, that the land in question, then owned in fee by Sheffield Wilcox and known as his homestead, "shall be and the same is hereby declared to be held in trust for said Rollin Wilcox during his life, and for his heirs after his decease, upon the said Rollin Wilcox complying with and fulfilling the" covenants above quoted. This is not the only provision, as we shall presently see, in regard to the heirs of the life tenant. So far, however, as it relates to the latter, the declaration above quoted creates a trust on condition that the cestui que trust for life, "his heirs, executors, and administrators," keep and perform said covenants: 2 Minor's Inst., 227, 229. The word "upon" is evidently the equivalent of "on condition that," etc. The legal title was held by the donor, not solely for the benefit of those in whose favor the trust was declared, but also for his own benefit and protection. If the covenants of the equitable life tenant were not kept,

the donor had a right of re-entry for condition broken, and hence the trust was not and could not be executed during the life of the former, without depriving the latter of his right of dominion over his property. The declaration of trust is the same in effect as if Sheffield Wilcox had conveyed the land to a third party as trustee upon the same trusts and conditions. If for no other reason, such a trust will be upheld for the benefit and protection of the donor. A trust is never executed by the statute when its preservation is necessary, either for the protection of a feme covert, spendthrift child, or to support a contingent remainder, or to serve some other useful and lawful purpose: Husband's Trusts, §§ 281, 284, etc.; Rife v. Geyer, 59 Pa. 393, 396; Dodson v. Ball, 60 Pa. 492, 496. In Rife v. Geyer, supra, it is said: " Whenever it is necessary for the accomplishment of any object of the creator of the trust, that the legal estate should remain in the trustee, then the trust is a special active one. The true test is whether a court of equity in Pennsylvania would decree a conveyance of the legal title. . . . . Whenever the entire beneficial interest is in the cestui que trust without restriction as to the enjoyment of it, there is no reason why it should not be considered as actually executed."

Applying the test above stated to the facts of this case, it is very clear that no chancellor would have compelled Sheffield Wilcox to convey the land in question to his son Rollin and thus deprive him of the benefit of the legal title which he retained, in part at least, for his own protection.

In addition to the declaration of trust above quoted, the agreement concludes with the following provision, predicated of the fact that Rollin might and probably would survive his father, viz.: "At the decease of said Sheffield, the said Rollin may continue to occupy and enjoy said property during his natural life." It happened, however, that Rollin pre-deceased his father. The next and last provision in the agreement is, that at Rollin's death the land "shall go and be held by the heirs of said Rollin Wilcox and their assigns forever, in the same manner as if the title had now passed subject to a lien for the performance of the covenants hereinbefore contained." This, to some extent, qualifies the general declaration of trust first above quoted, and in effect gives a vested remainder in

fee to the heirs of Rollin, enjoyable in possession immediately upon his death, subject only to a lien or charge on the land to secure full performance of the covenants.

As we have seen, the interest of Rollin Wilcox was an equitable life estate on condition. The trust as to him was special, not executed nor capable of being executed during his lifetime without the consent of his father; while the remainder to his heirs was executed, and therefore in effect, if not in form, a legal estate. The quality of the estate for life being different from that of the remainder, the two did not coalesce and, under the rule in Shelley's Case, constitute an estate-tail. It is well settled that the interest limited to the ancestor, and to his heirs, must be of the same quality; that is, both must be legal, or both equitable : 2 Minor's Inst., 342; Husband's Trusts, § 284; Steacy v. Rice, 27 Pa. 75, 81; Bacon's App., 57 Pa. 504, 514. If the trust as to both had been executed, as the learned judge of the Common Pleas held it was, his conclusion would have been correct; but, in that respect, we think he was mistaken.

> Judgment reversed; and judgment is now entered on the case stated, in favor of the plaintiff for the undivided one fourth of the land with six cents damages and costs.