## Lyons, Appellant, *v.* Cantor et al.

414

Argued November 21, 1949, Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Harris C. Arnold,* with him *Arnold, Bricker & Beyer,* for appellant.

*Alexander T. Stein,* for appellees.

OPINION BY MR. JUSTICE HORACE STERN, January 3; 1950:

The controversy in this case centers on the proper construction to be given to a certain paragraph in a lease.

The lease in question was from Mary B. Ledwith to Simon A. and Benjamin Cantor, for a term of five years and nine months from July 1, 1945 to March 31, 1951. Mrs. Ledwith was the owner of the property Nos. 130, 132 and 134 N. Queen Street, Lancaster, and this lease was for the first floor store room and the basement thereunder at No. 134. Paragraph 20 reads as follows: "From April 1, 1949, to January 1, 1951, upon any

sale of the real estate of which the herein demised premises are a part, this Lease may be lawfully terminated, at the sole option of the Landlord, by giving to the Tenant six months' notice in writing of such termination. In case this termination privilege is exercised, the option privilege granted in Paragraph 21 is likewise extinguished and rendered null and void." *

On August 31, 1946, Mrs. Ledwith sold and conveyed the property to Ben Lyons and at the same time assigned to him the Cantor lease; since then the Cantors have paid their rent to Lyons. On March 17, 1949, he served written notice upon them, pursuant to paragraph 20, that he was terminating the lease as of October 1, 1949, and he requested them to deliver possession to him on that day. They replied, through their counsel, that they refused to recognize the notice to vacate as valid, and they asserted that they had the right to remain in the premises to the end of the term specified in the lease. Lyons thereupon presented a petition to the court for a declaratory judgment. No facts were in dispute. The sole issue raised by the tenants was whether, under paragraph 20 of the lease, a sale of the property which would give the landlord the right of termination had to be made between April 1, 1949, and January 1, 1951, and whether, therefore, the sale by Mrs. Ledwith to

---

* Paragraph 21, thus referred to, is as follows:

"Subject to its extinguishment by the privilege reserved to the Landlord in Paragraph 20, the Tenant has the privilege of renewing this Lease for an additional five year term from April 1, 1951, . . . This option must be exercised in writing by the Tenant prior to January 1, 1951. In case the Lease is extended, by the exercise of the option privilege granted in this Paragraph, then and in such case at any time after April 1, 1954, upon any sale of the real estate of which the herein demised premises are a part, this Lease may be lawfully terminated, at the sole option of the Landlord, by giving to the Tenant six months' notice in writing of such termination."

Lyons on August 31, 1946, was ineffective for that purpose. The court below decided in favor of the tenants and entered judgment in their favor.

The court received testimony from the plaintiff, from the real estate broker who negotiated the lease, from the lawyer who drafted it, and from one of the defendants, in order to ascertain whether there was any agreement or any expression of a mutual understanding between the parties in regard to this controverted paragraph of the lease, but nothing of that nature was disclosed. The defendant who testified, Simon A. Cantor, undertook to explain his own understanding of its meaning, but his opinion in that regard, not having been communicated to Mrs. Ledwith or to her representative at or before the time of the execution of the lease, cannot be considered as bearing upon the issue. Subsequent statements by a party of what he intended the written language to mean or how he understood it are not admissible. "When a person takes part in a *bilateral* act—i.e., a transaction in which other persons share—he must accept a common standard; he cannot claim to enforce his individual standard of meaning." 9 Wigmore on Evidence (3rd ed.) pp. 216, 217, §2466. "The unexpressed intent, motive or belief existing in Mr. Mauser's mind when he signed the papers, could not aid the jury in ascertaining whether the language or conduct of the plaintiff had been such as to create such an intent, motive or belief. The parties to a contract may often have different impressions regarding its effect upon their respective interests, but the thoughts of one certainly cannot be proved to bind the other." : *Spencer v. Colt*, 89 Pa. 314, 320.

It is clear, then, that the lease must be construed solely by an analysis of its language, which, it must be presumed, expressed the intent of the parties. And, while

we are not unmindful of the general principle that ambiguities in a lease prepared by the lessor (as was the case here) should receive a construction in favor of the lessee, we are of opinion that paragraph 20 is so reasonably clear in meaning as not to justify a resort to that rule of interpretation. It contains three provisions which are certainly beyond the realm of dispute. One is that the lease could be terminated, at the option of the landlord, during the period from April 1, 1949, to January 1, 1951. The second is that, for such purpose, it was necessary to give the tenants six months' notice in writing. The third is that, in order for the landlord to have the right to terminate during that period, a sale of the property must have been made. The only contention now raised by defendants is that the required sale must occur during that same period from April 1, 1949 to January 1, 1951.

We are of opinion, for the following reasons, that there is no basis for such an interpretation:

1. The clause does not expressly so state; it does not say: "upon any sale of the real estate *during that period.*"

2. If, as defendants claim, the sale had to be made *after* April 1, 1949, then, since six months' notice of termination must be given, there could be no termination before October 1, 1949, and thus the period in which termination could be effected would be narrowed from 21 months (April 1, 1949 to January 1, 1951), which is the period expressly designated in the lease, to 15 months (October 1, 1949 to January 1, 1951). Moreover, since a sale made after July 1, 1950 could not be used as the basis for termination because of the necessity of six months' notice, the result would be, if defendants' interpretation were accepted, that the only sale of which lessor could take advantage would have to be made between April 1, 1949 and July 1, 1950,

which is likewise a period of only 15 months. It is inconceivable that the parties intended that no sale was to enable the lessor to terminate the lease unless it were made during that comparatively small interval of time, for, so construed, the provision would surely be without rhyme or reason.

3. The word "upon" in the phrase "upon any sale of the real estate" is quite obviously used to denote, not time, but a condition precedent. When an event is certain to occur the word "upon" is synonymous with the word "when" or "thereupon"; for example, *"upon my death my children shall receive my library"*. Where however, the happening of the event is contingent or uncertain the word "upon" has ordinarily the meaning of "if" or "on condition that"; for example, *"upon my surviving my children my brother shall receive my library"*; see *Little v. Wilcox*, 119 Pa. 439, 447, 13 A. 468, 474. So here, *"upon any sale of the real estate"* means, not *when*, but *if* any such sale occurs, that being the condition upon which alone the lessor was to have the right to terminate the lease; there is nothing in the use of the word "upon" which suggests that the phrase "upon any sale of the real estate" was intended to relate back grammatically to the designation of the period during which the lease might be terminated.

4. Even were we to assume that paragraph 20 presents any real difficulty of interpretation, certainly the construction to be chosen should be the one which makes the provision reasonable and most likely expressive of the intention of the parties, having in mind the circumstances surrounding their negotiation of the lease. What Mrs. Ledwith undoubtedly wanted was to make sure that she could dispose of the property,—something she would probably not be able to do if the purchaser had to wait 5 or possibly 10 years before obtaining posses-

sion; it was therefore her desire to have a provision that in case she sold the property she could terminate the lease on six months' notice. On the other hand, what the Cantors wanted was to have the assurance of at least a minimum time during which, even if the property were sold, the lease could not be terminated. In the endeavor to reconcile these conflicting interests it was agreed, as the lawyer who drafted the lease testified and as the lease itself provides, that if the property were sold the lease could be terminated by the lessor, but not until April 1, 1949, thus assuring the tenants of an undisturbed tenancy for at least three years and nine months. As a practical matter the *time when the sale might take place* was wholly immaterial; the only important point was *when the lease could be terminated if the property were sold.* It is true that Simon A. Cantor testified that if a sale could not be made before April 1, 1949, defendants would be in a better position themselves to purchase the property, but this attempt to give support to their contention is wholly unconvincing in view of the fact that their tenancy was of only one store in a very large building, and, furthermore, that they neither requested nor obtained any option, or any priority right, to purchase the property.

It may be pointed out in conclusion that every semblance of ambiguity in paragraph 20 disappears by the mere transposition of its clauses as follows: "Upon any sale of the real estate of which the herein demised premises are a part, this Lease may be lawfully terminated, at the sole option of the Landlord, from April 1, 1949, to January 1, 1951, by giving to the Tenant six months' notice in writing of such termination."

The judgment is reversed and the record remanded with direction to enter a decree in accordance with this opinion,